UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | | |
|---|---|---|
| BLUE CITI LLC, a New York Limited Liability Company, | : | Case No.: |
| | : | |
| Plaintiff, | : | |
| | : | **COMPLAINT** |
| - against - | : | |
| | : | |
| 5BARZ INTERNATIONAL INC., a Nevada Corporation | : | |
| | : | |
| Defendants. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiff, Blue Citi LLC, by its undersigned attorneys, for their complaint, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for specific performance, a permanent injunction, breach of contract, and related relief arising as the result of defendants' conduct in connection with certain agreements to purchase securities and related convertible note agreements.  After entering into negotiated, arms-length agreements, for which defendant 5Barz International Inc. ("BARZ") received valuable consideration, BARZ breached the agreements, *inter alia*, by:  (i) failing to honor Blue Citi's notice of conversion, (ii) failing to establish and increase a share reserve, (iii) failing to timely submit their required SEC filings, (iv) defaulting under the terms of similar agreements, and (v) by admitting in public filings that it is insolvent and unable to pay its debts as they come due.  Accordingly, plaintiff seeks the relief set forth herein.

## PARTIES

2.      Plaintiff Blue Citi LLC ("Blue Citi" or "plaintiff") is a limited liability company duly organized under the laws of the State of New York and having a place of business located at 440 East 79th Street, New York, New York.

3.      The members of Blue Citi are Robert Malin, who is resides in the commonwealth of Puerto Rico, and Linda Malin who resides in New York.

4.      For purposes of diversity, Blue Citi is a citizen of New York and Puerto Rico.

5.      Upon information and belief, Defendant 5Barz International Inc. ("BARZ") is a corporation organized and existing under the laws of the State of Nevada having its principal place of business located at 9444 Waples Street, Suite 140, San Diego, California 92121.

6.      For purposes of diversity, BARZ is a citizen of Nevada.

7.      BARZ is a publically traded company, trading under the symbol "BARZ."

## JURISDICTION AND VENUE

8.      The Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(2) in that the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9.      This Court has supplemental jurisdiction of Plaintiff's various state law claims pursuant to 28 U.S.C. section 1367(a).

10.     Venue is proper in this District pursuant to 27 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is subject of this action is situated.

11.     Additionally, in the relevant agreements, defendants consented to jurisdiction and venue in the Southern District of New York.

## FACT COMMON TO ALL CLAIMS FOR RELIEF

12.    On or about August 26, 2015, after arm's-length negotiations, BARZ executed a Securities Purchase Agreement (the "SPA") and Convertible Redeemable Promissory Note to Blue Citi (the "Note") in the amount of $110,000. A true and correct copy of the Note is attached hereto as Exhibit A.   A true and correct copy of the SPA is annexed as Exhibit B.

13.    In connection with the negotiation of the various agreements, BARZ was represented by sophisticated counsel.

14.    The Note provides that BLUE CITI, at any time after execution, has the right to convert all or part of the Note into shares of BARZ common stock (the "Common Stock"). Specifically, §4(a) of the Note provides in pertinent part:

> The Holder of this Note is entitled, at its option, at any time after full cash payment for the shares convertible hereunder, to convert all or any amount of the principal face amount of this Note then outstanding into shares of the Company's common stock (the "Common Stock") …

Ex. A at 2, paragraph 4(a).

15.    In order to convert the Note, BLUE CITI was required to submit a Notice of Conversion to BARZ.  Accordingly, §3 of the Note provides, in pertinent part:

> Any Holder of this Note electing to exercise the right of conversion set forth in Section 4(a) hereof, in addition to the requirements set forth in Section 4(a), and any prospective transferee of this Note, also is required to give the Company written confirmation that this Note is being converted ("Notice of Conversion") in the form annexed hereto as <u>Exhibit A</u>.

16.    As §4(a) of the Note dictates, the price at which each respective Note was convertible (the "Conversion Price") was to be determined "for each share of Common Stock to be equal to 60% of the **<u>lowest trading price</u>** of the Common Stock as reported on the National Quotations Bureau OTCQB exchange which the Company's shares are traded . . . for the twenty

day look back at the lower of (i) 20 trading days immediately preceding the clos- ing date or (ii) 20 trading days immediately preceding the receipt of a notice of conversion.…"

17.    Further, under §4(a), Notices of Conversion are to be "effectuated by the Company [5BARZ] delivering the shares of Common Stock to the Holder within 3 business of receipt by the Company of the Notice of Conversion."

18.    In order to ensure that sufficient shares are available for conversion, §12 of the Note provides that "[t]he Company shall issue irrevocable transfer agent instructions reserving 5,800,000 shares of its Common Stock for conversion under this Note (the "Share Reserve")." Further, the Note requires that, "[t]he Company should at all times reserve a minimum of four times the amount of shares required if the Note would be fully converted.  The reserve shall be replenished as needed to allow for conversions of this Note using said 4x reserve".

19.    Concurrently with the Note, BARZ issued a letter to its transfer agent ("TA"), , noting that it was, and is:

> You are hereby irrevocably authorized and instructed to reserve five million eight hundred thousand (5,800,000) shares of common stock ("Common Stock") of the Company for issuance upon for conversion of the Note in accordance with the terms thereof ("Reserved Shares"). The Investor shall have the right to periodically request that the number of reserved shares be increased so that the number of reserved shares at least equals **400%** of the number of shares of Company common stock issuable upon conversion of the Note.
>
> You are hereby further irrevocably authorized and directed to issue the shares of Common Stock so reserved upon your receipt from the Investor of a notice of conversion ("Notice of Conversion") executed by the Investor in accordance with the terms of the Notice of Conversion with no further action by the Company required for the Investor to effect such conversion.

BARZ's Letter to the transfer agent is attached as Exhibit C.

20.    The Letter to the transfer agent further provides that: "The Company agrees that in the event that the Transfer Agent resigns as the Company's transfer agent, the Company shall engage a suitable replacement transfer agent that will agree to serve as transfer agent for the

Company and be bound by the terms and conditions of these Irrevocable Instructions within five (5) business days. Furthermore, if the company decides to switch or terminate the Transfer Agent, 30 days' notice of termination must be given,"

21.     The conversion feature of the Note is a material term as investment in BARZ was exceedingly risky. Therefore, BLUE CITI was only willing to purchase the Note if it could earn a return commensurate with the risk.  BLUE CITI's ability to obtain stock at a discount to the market price and resell it on the open market provided BLUE CITI with an opportunity to earn such a return.  Any failure by BARZ to honor Conversion Notices, therefore, deprives BLUE CITI of the essential benefit for which it negotiated, and for which it purchased, the Note.

## BARZ BREACHES THE AGREEMENTS

22.     Although BARZ was required to maintain the Share Reserve in an amount of four times the amount of shares that could be converted under §12 of the Note, BARZ did not comply with this provision.  Instead, after issuing the irrevocable instruction, BARZ proceeded to switch transfer agent, and in violation of the agreements, failed to establish the Share Reserve or to give the requisite 30 days' notice.

23.     Accordingly, BARZ was in breach of the Note immediately upon inception.

24.     Additionally, on or about November 16, 2015, BARZ became delinquent in its filings with the Securities and Exchange Commission ("SEC"), thereby breaching the obligation to stay current outlined in Section 8(m) of the Note.

25.     On December 30, 2015, plaintiff duly issued a notice of conversion (the "Notice of Conversion") electing to convert $83,600.00 of the Note into 1,857,777 shares at a conversion price of .0751.

26.     BARZ refused to honor the Notice of Conversion.  Accordingly, BARZ once again breached the Note and SPA.

27.     BARZ became current in its filings on or about March 14, 2016 by filing its 10-K for the period ending September 30, 2015.

28.     Just 16 days later, on or about March 30, 2016 BARZ again became delinquent in its filings with the SEC, once again breaching the obligation to stay current outlined in Section 8(m) of the Note.

29.     One again, BARZ became current in its filings on or about April 27, 2016 by filing its 10-K for the period ending December 31, 2015.

30.     19 days later, on or about May 16, 2016 BARZ again became delinquent in its filings with the SEC, once again breaching the obligation to stay current outlined in Section 8(m) of the Note.

31.     On March 10, 2016 a complaint was filed in the Eleventh Judicial Circuit Court in Miami-Dade County, Florida, against BARZ by Group 10 Holdings, LLC based upon BARZ'S default under a convertible note.

32.     On April 11, 2016 a complaint was filed in the Supreme Court of the State of New York, County of New York, against 5BARz International Inc. and Daniel Bland by R Squared Partners LLC., based upon BARZ'S default under a convertible note.

33.     On April 22, 2016 a complaint was filed in the Supreme Court of the State of New York, County of New York, against 5BARz International Inc. by Firstfire Global Opportunity Fund, based upon BARZ'S default under a convertible note.

34.     On May 31, 2016 a complaint was filed in the United States District Court, Eastern District of New York, against 5BARz International, Inc. by LG Capital Funding, LLC, based upon BARZ'S default under a convertible note.

35.     On July 6, 2016 a complaint was filed in the District Court of Dallas County Texas, (DC-16-08001), against 5BARz International, Inc., and certain officers of the Company by JSJ Investments, Inc, based upon BARZ'S default under a convertible note.

36.     On August 4, 2016, BARZ was named as a defendant in an action in the United States District Court, Southern District of New, entitled Union Capital LLC v 5BARZ International Inc., Case No. 16-cv-096203, based upon BARZ'S default under a convertible note.

37.     On August 5, 2016 a complaint was filed in the United States District Court, Southern District of New York, against 5BARz International, Inc. by Adar Bays LLC, based upon BARZ'S default under a convertible note.

38.     Each of these lawsuits triggered a default under the terms of the Note.

39.     Additionally, in a recent filing with the SEC, BARZ admitted that it is likely insolvent and noted as follows:

> The Company incurred losses of $3,538,456 and $5,319,659 during the six months ended June 30, 2016 and 2015 respectively. Cash used in operating activities was $2,455,791 and $1,855,745 for the six months ended June 30, 2016 and 2015 respectively. The Company is seeking additional sources of equity or debt financing, and there is no assurance these activities will be successful. These factors raise substantial doubt about the Company's ability to continue as a going concern and the Company's continued existence is dependent upon adequate additional financing being raised …

40.     Based on the foregoing events, BARZ's failure to honor BLUE CITI's Notices of Conversion and other actions and omissions has given rise to one or more "Event of Default" pursuant to the terms the Note. In addition thereto, BARZ's conduct has caused multiple "Events of Default" to occur.

41.     With regard to the Notice of Conversion, BARZ defaulted under §8(k) of the Note, which states that an "Event of Default" shall occur if "the Company shall not deliver to the Holder the Common Stock pursuant to paragraph 4 herein without restrictive legend within 3 business days of its receipt of a Notice of Conversion."  Ex. A at 5.

42.     BARZ did not deliver the shares within three (3) business days BARZ's receipt of the Notice of Conversion.  Ex. A at 5.

43.     Second, by failing to facilitate BLUE CITI's Notice of Conversion, BARZ rendered itself in default of §8(b) of the Note.  Ex. A at 4.  Section 8(b) provides that an "Event of Default" shall occur if, "[a]ny of the representations or warranties made by the Company herein or in any certificate or financial or other written statements heretofore or hereafter furnished by or on behalf of the Company in connection with the execution and delivery of this Note, or the Securities Purchase Agreement under which this note was issued shall be false or misleading in any respect." Ex. A. at 4.

44.     Under §4 of the Note, BARZ agreed that the Holder, BLUE CITI, would be entitled to convert all or any amount of the principal face amount of the Note then outstanding into shares of the Company's Common Stock *at its option*.  Ex. A at 5.  By neglecting to effectuate BLUE CITI's conversion, BARZ has provided to BLUE CITI an irrevocable option to convert any or all of the remaining principal value of the Note.

45.     Third, §8(c) of the Note provides that BARZ is in default if "The Company shall fail to perform or observe in any respect any covenant term provision condition agreement or obligation under this Note or any other notes issued to the Holder".

46.     Fourth, BARZ is in default under §8(h) of the Note, which states, in pertinent part, that an Event of Default shall occur if the Company "Defaulted on or breached any term of any

other note of similar debt instrument into which the Company has entered and failed to cure such default within the appropriate grace period".

47.     As a result of its failure to honor the note or similar debt instruments held by one one or more third party, including those set forth in the LG Action, BARZ is in default under §8(d) of the Note.

48.     Fifth, BARZ is in default under §8(l) of the Note, which states, in pertinent part, that an Event of Default shall occur if the Company "The Company shall not replenish the reserve set forth in Section  12,  within 3 business days of the request of the Holder".

49.      Sixth, BARZ is in default under §8(d) of the Note, which states, in pertinent part, that an Event of Default shall occur if: "[t]he Company shall: (1) become insolvent; (2) admit in writing its inability to pay its debts generally as they mature..."

50.     At no point has BLUE CITI ever, whether formally or informally, in writing or orally, waived BARZ's defaults.

51.     Section 8 of the Note outlines the negotiated-for and agreed-upon remedies for the differing Events of Default.  Among other things, plaintiff is permitted to enforce any and all of plaintiff's rights under the Note and SPA, or otherwise as permitted by law.

52.     Additionally §8 mandates that, "[u]pon an Event of Default, interest shall accrue at a default interest rate of 24% per annum, or if such rate is usurious or not permitted by current law, then at the highest rate of interest permitted by law."

53.     Due to BARZ's persistent and willful failure to remedy its various breaches, as of filing the instant action, default interest has been accruing at a rate of 24%.

54.     The default payments under the Note were reasonable at the time of entering the contract and are not grossly disproportionate to the conceivable losses that could occur from a

breach.  First, stocks such as BARZ's are volatile, making the timing of conversion and sale of the stock on the open market important.  Second, the ability to convert at a discount and sell on the open market, particularly in an upswing in the stock price, afforded BLUE CITI with an opportunity to make profits well beyond the daily default payments.

55.     The Note provides that "the Company hereby expressly waives demand and presentment for payment, notice of non-payment, protest, notice of protest, notice of dishonor, notice of acceleration or intent to accelerate."

56.     BLUE CITI has been, and continues to be, irreparably harmed by BARZ's failure to honor the Notice of Conversion.

57.     Damages from BARZ's failure to deliver the shares are inherently uncertain and difficult to calculate.  Since the parties entered in the Note in August of 2015, BARZ's Stock price has ranged from a low of 0.0451 on March 29, 2016 to a high of 0.2 on August 3, 2015 per share. Thus, the timing of conversions and sale of stock would be essential to the determination of damages.  Because it is impossible to discern with any accuracy precisely when BLUE CITI would have sold the converted shares, and how many it would sell had the conversion been honored, calculating its losses is impossible.

**The Settlement Agreement**

58.     On March 2, 2016, BARZ entered into a settlement agreement with Blue City (the "Settlement Agreement").  Among other things, the Settlement Agreement provides that BARZ agreed to pay plaintiff the sum of $168,065.00 over a period of 8 months.

59.     BARZ made the first payment, and but failed to make any subsequent payments. Instead, in lieu of the second, third, and fourth payment, BARZ gave Plaintiff an agreed upon number of shares valued at the equivalent amount of the monthly payments of $21,008.00.

60.     BARZ did not make any additional payments in any form.

61.     All notices and prerequisites to bringing this action, if any, including notices of default, have been complied with or were waived.

## FIRST CLAIM FOR RELIEF
## (<u>SPECIFIC PERFORMANCE</u>)

62.     BLUE CITI realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

63.     Pursuant to the agreements between them, Defendant is obligated to deliver 1,857,777 shares of BARZ Common Stock pursuant to the Notice of Conversion, along with the necessary resolutions and acceptance of the legal opinions furnished by BLUE CITI, sufficient to enable BLUE CITI to sell the shares publicly without restriction.

64.     Despite its obligation to do so, Defendant has failed and refused to deliver said shares of stock to BLUE CITI.

65.     Defendant has further failed to establish and increase the share reserve as required by the agreements.

66.     As a result of such failure and refusal by Defendants, BLUE CITI has suffered damages.

67.     BLUE CITI has no adequate remedy at law.

68.     In the absence of injunctive relief and specific performance, BLUE CITI will suffer irreparable harm.

69.     BLUE CITI requests, therefore, that the Court enter an order requiring Defendant to specifically perform the relevant agreements, including the SPA, Note, and letter to transfer agent, and to deliver immediately to BLUE CITI 1,857,777 shares of its Common Stock pursuant

to pursuant to the Notice of Conversion and to establish and increase the share reserve, along with the necessary resolutions and acceptance of the legal opinions furnished by BLUE CITI, sufficient to enable BLUE CITI to sell the shares publicly without restriction.

**SECOND CLAIM FOR RELIEF**
**(<u>BREACH OF CONTRACT</u>)**

70.     BLUE CITI realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

71.     The Note and SPA, are valid and binding agreements.

72.     As set forth more fully above, BARZ breached the agreements.

73.     BARZ's numerous breaches of the agreement include,  but are not limited to:

(i)      failing to honor  the Notice of Conversion; and

(ii)     failing to make timely filings with the SEC; and

(iii)    failing to establish and increase the share reserve; and

(iv)    its failure to honor of the terms, conditions, and warranties of the SPA and Note;

(v)     its default under the terms of similar notes, agreements, or debt instruments; and

(vi)    admitting in writing that it is insolvent and unable to pay its debts as they mature.

74.     BARZ's conduct constitutes a breach of, and default under, the terms of the Note, SPA and related agreements.

75.     Plaintiff has performed all obligations of the relevant agreements that were its obligation to perform except for those obligations that it could not perform because of defendant's breaches herein.

76.     BARZ's breach and default are governed by New York law under the terms of the Note.

77.     Blue Citi is therefore entitled to an award of damages in an amount to be determined at trial but in any event in excess of $100,000.00, including without limitation the balance of any portion of the Note that ultimately is not converted into shares, along with interest, and damages as provided for in the Note and by law.

### THIRD CLAIM FOR RELIEF
### (<u>CONVERSION</u>)

78.     BLUE CITI realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

79.     BLUE CITI has a right to possession of the shares that BARZ has refused to deliver which right is superior to BARZ's right to possess those shares.

80.     BARZ has wrongfully asserted dominion over the shares.

81.     Despite due demand, BARZ has refused to turn the shares over to BLUE CITI.

82.     BARZ has wrongfully interfered with BLUE CITI's right to possess those shares which interference constituted conversion of those shares by BARZ.

83.     As a result of BARZ's wrongful conversion of the shares, BLUE CITI has been damaged.

84.     BLUE CITI, therefore, is entitled to an award of damages in an amount to be determined at trial, but in any event in excess of One Hundred Thousand Dollars ($100,000.00).

### FOURTH CLAIM FOR RELIEF
### (<u>PERMANENT INJUNCTION</u>)

85.     BLUE CITI realleges and incorporates by reference each and every allegation contained in each preceding paragraph of this Complaint as if fully set forth herein.

86.  §5(l) of the SPA provides:

The Company acknowledges that a breach by it of its obligations hereunder will cause irreparable harm to the Buyer by vitiating the intent and purpose of the transaction contemplated hereby. Accordingly, the Company acknowledges that the remedy at law for a breach of its obligations under this Agreement will be inadequate and agrees, in the event of a breach or threatened breach by the Company of the provisions of this Agreement, that the Buyer shall be entitled, in addition to all other available remedies at law or in equity, and in addition to the penalties assessable herein, to an injunction or injunctions restraining, preventing or curing any breach of this Agreement and to enforce specifically the terms and provisions hereof, without the necessity of showing economic loss and without any bond or other security being required.

87.     Pursuant to its obligations under the relevant agreements, BARZ is obligated to deliver shares of its Common Stock, along with the necessary resolutions and acceptance of the legal opinions furnished by BLUE CITI, sufficient to enable BLUE CITI to sell the shares publicly without restriction.

88.     Despite its obligation to do so, BARZ has failed and refused to deliver said shares of stock to BLUE CITI as required by each of the Notice of Conversion.

89.     As a result of such refusal by BARZ, BLUE CITI has suffered damages.

90.     BLUE CITI has no adequate remedy at law.

91.     In the absence of injunctive relief, BLUE CITI will suffer irreparable harm.

92.     Additionally, BARZ consented to an injunction when entering into the Note and SPA.

93.     BLUE CITI requests, therefore, that the Court enter an order enjoining and requiring BARZ to deliver the shares of stock as called for in the relevant agreements in response to the Notice of Conversion that was sent and to honor future conversion notices.

**FIFTH CLAIM FOR RELIEF**
**(COSTS, EXPENSES & ATTORNEYS FEES)**

94.     BLUE CITI realleges and incorporates by reference each and every allegation contained in each preceding paragraph of this Complaint as if fully set forth herein.

95.     In accordance with the agreements between the parties, BARZ agreed to pay all costs and expenses, including reasonable attorneys' fees and expenses, incurred by BLUE CITI in collecting any amount under the Note or breach of the Agreements.

96.     First, §7 of the Note states, "[t]he Company agrees to pay all costs and expenses, including reasonable attorneys' fees and expenses, which may be incurred by the Holder in collecting any amount due under this Note."

97.     Next, §8 of the Note states, "[i]f the Holder shall commence an action or proceeding to enforce any provisions of this Note, including, without limitation, engaging and attorney, then, if the Holder prevails in such action, the Holder shall be reimbursed by the Company for its attorneys' fees and other costs and expenses incurred in the investigation, preparation and prosecution of such action or proceeding."

98.     Therefore, BLUE CITI is entitled to an award against BARZ for costs and expenses incurred in the prosecution of this lawsuit, including reasonable legal fees.

### SIXTH CLAIM FOR RELIEF
### (BREACH OF THE SETTLEMENT AGREEMENT-PLEAD IN THE ALTERNATIVE)

99.     BLUE CITI realleges and incorporates by reference each and every allegation contained in each preceding paragraph of this Complaint as if fully set forth herein.

100.     As set forth above, plaintiff and defendant entered into the Settlement Agreement.

101.     The Settlement Agreement is a valid and binding agreement.

102.     As set forth more fully above, BARZ breached the agreements.

103.    Among other things, the Settlement Agreement provides that BARZ agreed to pay plaintiff the sum of $168,065.00 over a period of 8 months.

104.    BARZ failed to make the last four payments, and thus breached the Settlement Agreement.

105.    BARZ therefore owes plaintiff the sum of $83, 977 in addition to "all other amounts otherwise due under the Note", as set forth in the Settlement Agreement

106.    Plaintiff has performed all obligations of the Settlement Agreement that were its obligation to perform except for those obligations that it could not perform because of defendant's breaches herein.

107.    Blue Citi is therefore entitled to an award of damages in an amount to be determined at trial but in any event in excess of $83, 977 in addition to all other amounts otherwise due under the Note.

<u>**CLAIM FOR RELIEF**</u>

**WHEREFORE**, Plaintiff BLUE CITI seeks judgment against Defendants as follows:

i.    On the First Claim for Relief, BLUE CITI requests that the Court enter an Order requiring Defendant to specifically perform the relevant agreements, including the SPA, Note, and letter to transfer agent, and to deliver immediately to BLUE CITI 1,857,777 shares of its Common Stock pursuant to pursuant to the Notice of Conversion, along with the necessary resolutions and acceptance of the legal opinions furnished by BLUE CITI, sufficient to enable BLUE CITI to sell the shares publicly without restriction, and to establish and increase its shares reserve.

ii.    On all Second and Third Claims for Relief, for damages in an amount to be determined, but in any event in excess of One Hundred Thousand Dollars ($10,000.00); and

iii.        On the Fourth Claim for Relief, the issuance of an injunction enjoining and requiring Defendant to deliver the shares of stock as called for in the relevant agreements in response to the Notice of Conversion that was sent; and

iv.        On the Fifth Claim for Relief for an award of BLUE CITI's costs and expenses in prosecuting this action, including reasonable legal fees;

v.        On the Sixth claim for Relief, awarding damaged of $83, 977.00  in addition to all other amounts otherwise due under the Note;

vi.        On all Claims for Relief, for interest, attorneys' fees and the costs and disbursements of this action; and

vii.        For such other further relief as the Court may deem just, proper, and in the interest of justice.


Dated: November 21, 2016
        New York, New York

                            LAW OFFICE OF JEFFREY FLEISCHMANN PC
                            By: /s/Jeffrey Fleischmann
                            Jeffrey Fleischmann, Esq. (JF-3172)

                            *Attorneys for Plaintiffs*

                            65 Broadway, Suite 842
                            New York, N.Y. 10006
                            Tel. (646) 657-9623
                            Fax (646) 351-0694
                            jf@lawjf.com