UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/19/2018

-------------------------------------------------------X

BLUE CITI, LLC,

                       Plaintiff,

          -against-

5BARZ INTERNATIONAL INC.,

                     Defendant.

16-CV-9027 (VEC)

OPINION & ORDER

-------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiff Blue Citi LLC has sued Defendant 5Barz International, Inc. for specific performance, breach of contract, conversion, and attorneys' fees. *See* Compl., Dkt. 1. In an order dated August 28, 2017 (the "Prior Order"), the Court granted Plaintiff summary judgment on its claim for specific performance and awarded Plaintiff attorneys' fees. *See* Prior Order, Dkt. 54. The Prior Order also directed Plaintiff to move for summary judgment on its remaining claims or those claims would be dismissed. *See id.* at 14. Plaintiff now moves for summary judgment on its breach of contract claim, seeking monetary damages. *See* Pl.'s Notice of Mot., Dkt. 55; Pl.'s Mem. of Law, Dkt. 59 at 2. Plaintiff also seeks attorneys' fees and expenses incurred in connection with this motion. *See* Pl.'s Mem. of Law, Dkt. 59 at 2. Defendant cross-moves, pursuant to Federal Rules of Civil Procedure 60(b)(4) and 12(c), to vacate the Prior Order and for judgment on the pleadings. *See* Def.'s Notice of Mot., Dkt. 68.

For the following reasons, Defendant's cross-motions are DENIED, and Plaintiff's motion for summary judgment is GRANTED. The Court awards Plaintiff $180,204.36 in damages, $116,950.00 in prejudgment interest, and $5,837.12 in attorneys' fees and expenses. All claims for which Plaintiff did not move for summary judgment are DISMISSED.

# BACKGROUND[1]

## I.     The Note

The Court assumes familiarity with the facts of this case.  *See generally* Prior Order.  In brief, in August 2015, Defendant sold Plaintiff a Convertible Redeemable Note (the "Note") with a principal face value of $110,000, a maturity date of August 2016, and an interest rate of 10 percent per annum.  *See id.* at 1–2; Malin Decl., Ex. A ("Note").  Plaintiff purchased the note for $100,000 (a 10 percent discount).  *See* Prior Order at 2; Malin Decl., Ex. B.

The Note contained a conversion option, pursuant to which Plaintiff could convert the Note's outstanding principal and interest into shares of Defendant's common stock.  *See* Prior Order at 2; Note § 4(a).  The Note set the conversion price at a 60 percent discount of the stock's lowest trading price during a 20-day "look back" period.  *See* Note § 4(a).  The Note required Defendant to deliver the converted shares to Plaintiff within three business days of Defendant's receipt of a Notice of Conversion and provided that Defendant's failure to do so would be an "Event of Default."  *See id.*  Upon the occurrence of an Event of Default, the Note would

---

[1]      The Court will refer to the parties' filings as follows:  the Declaration of Robert Malin, Dkt. 56, submitted in support of Plaintiff's motion, as "Malin Decl."; the Declaration of Jeffrey Fleischmann, Dkt. 57, submitted in support of Plaintiff's motion, as "Fleischmann Decl."; Plaintiff's Rule 56.1 Statement, Dkt. 58, as "Pl.'s 56.1 Stmt.";  Plaintiff's memorandum of law, Dkt. 59, submitted in support of its motion for summary judgment, as "Pl.'s Mem. of Law"; Defendant's memorandum of law, Dkt. 65, submitted in opposition to Plaintiff's motion for summary judgment, as "Def.'s Resp. Mem. of Law"; Defendant's response to Plaintiff's 56.1 Statement, Dkt. 66, as "Def.'s 56.1 Stmt."; and Defendant's memorandum of law in support of its cross-motion to vacate, Dkt. 69, as "Def.'s Cross-Mot. Mem. of Law."  Defendant submitted two declarations of Mark Geoghegan:  one in support of its motion to vacate, Dkt. 70, which the Court will refer to as "First Geoghegan Decl.," and one in support of its response to Plaintiff's motion for summary judgment, Dkts. 71, 72, which the Court will refer to as "Second Geoghegan Decl." Plaintiff submitted, in a single memorandum of law, a combined reply in further support of its motion for summary judgment and response in opposition to Defendant's cross-motion, Dkt. 73, which the Court will refer to as "Pl.'s Reply Mem. of Law."  Finally, the Court will refer to the Supplemental Declaration of Robert Malin, submitted in further support of Plaintiff's motion for summary judgment, Dkt. 74, as "Supp. Malin Decl."; the Supplemental Declaration of Jeffrey Fleischmann, submitted in further support of Plaintiff's motion, Dkt. 75, as "Supp. Fleischmann Decl."; and Defendant's reply memorandum of law in further support of its cross-motion to vacate, Dkt. 76, as "Def.'s Reply Mem. of Law."

become immediately due and payable, and default interest would begin accruing at a rate of 24 percent per annum. *See id.* § 8.

Additionally, the Note required Defendant to place into a reserve four times the number of shares that would be required if the Note were fully converted. *See id.* § 12. Finally, the Note required Defendant to pay "all costs and expenses, including reasonable attorneys' fees and expenses, which [were] incurred by [Plaintiff] in collecting any amount due under the Note," *id.* § 7, in addition to attorneys' fees incurred in any "action or proceeding to enforce any provision of [the] Note," *id.* § 8.

## II.    Defendant's Breach of the Note

On December 30, 2015, Plaintiff sent a Notice of Conversion to Defendant, seeking to convert $83,600 of the Note's outstanding value into 1,857,777 shares of Defendant's common stock. *See* Prior Order at 2; Malin Decl. ¶ 4; Malin Decl. Ex. C; Def.'s 56.1 Stmt. ¶ 3. The Notice of Conversion set the conversion price at $0.045 per share, based on a 60 percent discount of the stock's lowest trading price during the "look back" period (specifically, its price of $0.0751 per share on December 4, 2015). *See* Malin Decl. Ex. C. Defendant failed to timely deliver the shares to Plaintiff. *See* Prior Order at 2; Pl.'s 56.1 Stmt. ¶ 4.[2]

In March 2016, the parties entered into a Settlement Agreement. *See* Prior Order at 3. The Settlement Agreement required Defendant to pay Plaintiff $168,065 in eight monthly installments of $21,008. *See id.* at 3, 10. While it is not entirely clear how the parties arrived at the $168,065 figure, the amount appears to represent principal, interest, and default interest due

---

[2]    Defendant argues that the Notice of Conversion was not valid for several reasons, including that it was "not provided in the format provided for" in the Note, that it "appeared to be a negotiation tactic," that it provided for charges against Defendant "to which [Plaintiff] was not entitled," and that it constituted "criminal usury." Def.'s 56.1 Stmt. ¶ 4. Nevertheless, Defendant does not dispute the underlying facts that it received the Notice of Conversion and that it failed to timely deliver the shares requested. *See id.* ¶ 5.

under the Note, along with an additional 40 percent "spicer." *See id.* at 3 n.5. After entering into

two addenda to the Settlement Agreement, Defendant paid Plaintiff one installment in cash and

three installments in shares, for a total value of $84,033 (*i.e.*, approximately half of the amount

due under the Settlement Agreement). *See id.* at 3–4, 10; Def.'s 56.1 Stmt. ¶ 6; Pl.'s Reply

Mem. of Law at 15. Defendant has not paid the remaining amount due under the Settlement

Agreement. *See* Prior Order at 10.

## III. Procedural History

Plaintiff filed this action on November 21, 2016, and subsequently moved for summary

judgment, seeking an order directing Defendant to deliver the shares requested in the Notice of

Conversion. *See* Pl.'s Prior Notice of Mot., Dkt. 28; Prior Order at 1, 11. The Court granted

Plaintiff's motion, holding that the Note was a valid contract and that Defendant had breached it

by failing to deliver the requested shares. *See* Prior Order at 12 ("There is a valid contract in

place, and Blue Citi performed its obligations thereunder."); *id.* at 2 ("There is no dispute

between the parties that 5Barz breached the Note."); *id.* at 10 (same); *id.* at 11 (same). The Court

also awarded Plaintiff $18,988.33 in attorneys' fees. *See id.* at 12–14. Defendant subsequently

delivered the shares as ordered. *See id.* at 12–13; *See* Pl.'s 56.1 Stmt. ¶ 6; Def.'s 56.1 Stmt. ¶ 6.

The Prior Order also held that the Settlement Agreement was an executory accord to the

Note, meaning that Defendant's obligations under the Note remain in force unless and until

Defendant materially fulfills its obligations under the Settlement Agreement (and its addenda).

*See* Prior Order at 5–9.

Plaintiff now moves for summary judgment on its breach of contract claim, seeking

damages for the reduction in the value of Defendant's shares between the date on which

Defendant was first required to deliver the shares (which Plaintiff alleges was December 30,

2015) and the date that Defendant finally delivered the shares as required by the Prior Order

(September 1, 2017). *See* Pl.'s Mem. of Law at 2. Plaintiff also seeks reimbursement for

attorneys' fees and expenses incurred in connection with this motion. *See id.*

Defendant cross-moves to vacate the Prior Order and for judgment on the pleadings,

seeking to dismiss the Complaint in its entirety. *See* Def.'s Cross-Mot. Mem. of Law at 1, 24.

## DISCUSSION

### I. Defendant's Cross-Motion to Vacate and Cross-Motion for Judgment on the Pleadings Are Denied

#### A. Defendant's Cross-Motion to Vacate Is Denied

Rule 60(b)(4) allows a court to relieve a party from a final judgment if "the judgment is

void." Fed. R. Civ. P. 60(b)(4). "[A] void judgment is one so affected by a fundamental

infirmity that the infirmity may be raised even after the judgment becomes final." *United*

*Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). Relief under this rule is

"extraordinary," *Sanchez v. MTV Networks*, 525 F. App'x 4, 6 (2d Cir. 2013), and is allowed

"only in the rare instance where a judgment is premised either on a certain type of jurisdictional

error or on a violation of due process that deprives a party of notice or the opportunity to be

heard." *Espinosa*, 559 U.S. at 271. If a judgment does not fall into one of these two categories,

relief under Rule 60(b)(4) is not allowed. *See id.*; *Sanchez*, 525 F. App'x at 6.

Defendant's primary argument is that the Note violates New York's laws against criminal

usury. *See* Def.'s Cross-Mot. Mem. of Law at 1. In Defendant's view, criminally usurious

financial instruments are "void *ab initio*" and unenforceable as a matter of law. *See id.*

Defendant appears to argue that because the Prior Order directed Defendant to perform

obligations under the Note, and because the Note is unenforceable as a matter of law, the Court's

Prior Order must be vacated. *See id.*

Defendant's motion is procedurally improper. Defendant fails to articulate how the allegedly usurious nature of the Note deprived this Court of subject-matter jurisdiction or deprived Defendant of due process. Rather, Defendant's arguments go to the merits of the Prior Order. *See, e.g.*, Defs.' Reply Mem. of Law at 1 ("[V]acatur is proper because the Court acted inconsistent with the law . . . ."). But Rule 60(b)(4) is not a vehicle to reargue the merits of a prior judgment or otherwise to show that the judgment relied on erroneous principles of law. *See Espinosa*, 559 U.S. at 270 ("A judgment is not void, for example, simply because it is or may have been erroneous."). Accordingly, Defendant's cross-motion to vacate is denied.

### B. Defendant's Cross-Motion for Judgment on the Pleadings Is Denied

"Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). "When reviewing a Rule 12(c) motion for judgment on the pleadings, the Court applies the same standards as on a 12(b)(6) motion to dismiss. The Court must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party." *Smith v. Wilson*, No. 96-CV-5598, 1997 WL 786928, at *1 (S.D.N.Y. Dec. 23, 1997) (citation and internal quotation marks omitted).

"[T]he 'law of the case' doctrine is a rule of practice followed by New York courts that dictates that a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent states of the same litigation." *Perreca v. Gluck*, 262 F. Supp. 2d 269, 272 (S.D.N.Y. 2003) (internal quotation marks omitted); *see also Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand*, 322 F.3d 147, 167 (2d Cir. 2003). "As most commonly defined, the doctrine posits that when a court decides upon a rule of

law, that decision should continue to govern the same issues in subsequent stages in the same case." *Perreca*, 262 F. Supp. 2d at 272 (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). Under this doctrine, a court's prior decisions "may not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Coopers & Lybrand*, 322 F.3d at 167 (internal quotation marks omitted).

Defendant's motion for judgment on the pleadings seeks to dismiss the Complaint on the ground that the Note is usurious. *See* Defs.' Cross-Mot. Mem. of Law at 24–25. Defendant's motion fails. By arguing that the Note is unenforceable as a matter of law, Defendant essentially seeks to revisit this Court's prior holding that the Note is a valid contract. *See* Prior Order at 2, 10–12. Defendant had a full and fair opportunity to raise a usury defense in response to Plaintiff's prior motion for summary judgment, but Defendant chose not to do so. *See* Def.'s Cross-Mot. Mem. of Law at 21 ("[A]lthough properly raised by the defendant in its answer, [Defendant] did not raise the defense of criminal usury to oppose the prior motion for partial summary judgment."). By failing to press its affirmative defense, Defendant waived the defense. Law of the case operates the same way whether an argument is raised (and rejected) or waived. *See In re Nassau Cty. Strip Search Cases*, 958 F. Supp. 2d 339, 346 (E.D.N.Y. 2013) ("[T]he law of the case as a result of waiver is no different than a matter that becomes the law of the case as a result of argument." (quoting *Morris v. Am. Nat. Can Corp.*, 988 F.2d 50, 52 (8th Cir. 1993))); *cf. Capitol Records, LLC v. ReDigi Inc.*, No. 12-CV-95, 2015 WL 5076457, at *4 (S.D.N.Y. Aug. 27, 2015) ("A court may . . . deem an affinnative [*sic*] defense to have been waived, despite being pleaded in the party's answer, if the party does not press it in its summary judgment papers." (citing *Summit Health, Inc. v. APS Healthcare Bethesda, Inc.,* 993 F. Supp. 2d

379, 397 (S.D.N.Y. 2014))).  Defendant offers no reason why the law of the case doctrine does not foreclose his argument.  Accordingly, Defendant's cross-motion for judgment on the pleadings is denied.

### C.  The Note Is Not Criminally Usurious

Even if Defendant's cross-motions to vacate and for judgment on the pleadings were procedurally proper and not barred by law of the case, they would fail because, as a matter of law, the Note is not criminally usurious.

#### 1.  Legal Standard

Under New York law, a contract is criminally usurious if the parties to the agreement knowingly provide for an interest rate of 25 percent per annum or more.  *See* N.Y. Penal Law § 190.40; *Union Capital LLC v. Vape Holdings Inc.*, No. 16-CV-1343, 2017 WL 1406278, at *4 (S.D.N.Y. Mar. 31, 2017); *Sabella v. Scantek Med., Inc.*, No. 08-CV-453, 2009 WL 3233703, at *17 (S.D.N.Y. Sept. 25, 2009).  "Usury is an affirmative defense and a heavy burden rests upon the party seeking to impeach a transaction for usury." *Union Capital*, 2017 WL 1406278, at *4 (quoting *Gandy Mach. Inc. v. Pogue,* 106 A.D.2d 684, 685 (3d Dep't 1984)).  Indeed, "[t]here is a strong presumption against a finding of usury, and . . . the defendant [must] establish usury by clear and convincing evidence."  *Sabella*, 2009 WL 3233703, at *17 (alterations in original) (quoting *Zhavoronkin v. Koutmine,* 52 A.D.3d 597, 562 (2d Dep't 2008)).

#### 2.  Application to this Case

The Note charged an interest rate of 10 percent per annum.  *See* Note §§ 4(b), 8. Defendant argues that a number of other provisions in the Note and payments made pursuant to the Note effectively raised the interest rate above the 25 percent per annum threshold—in particular:  (1) the discount included in the conversion price; (2) the shares that Defendant was

required to place into reserve; (3) the Note's 24 percent per annum default interest rate; (4) the $84,033 that Defendant paid Plaintiff under the Settlement Agreement; and (5) the shares that the Court ordered Defendant to deliver to Plaintiff. *See* Def.'s Cross-Mot. Mem. of Law at 9–16; Def.'s 56.1 Stmt. ¶ 6. None of Defendant's arguments have merit.

### a.      The Conversion Price

New York's usury laws do not apply to an option to convert a loan's principal into shares of stock. *See Beaufort Capital Partners LLC v. Oxysure Sys., Inc.*, No. 16-CV-5176, 2017 WL 913791, at *3 (S.D.N.Y. Mar. 7, 2017); *Union Capital*, 2017 WL 1406278, at *4; *Phlo Corp. v. Stevens*, 00-CV-3619, 2001 WL 1313387, at *5 (S.D.N.Y. Oct. 25, 2001). This is because the usury laws apply only to loans, not investments. *See Beaufort Capital*, 2017 WL 913791, at *3. Once a loan's principal is converted to shares, the transaction takes on "the character of an equity investment," and the usury laws no longer apply. *Beaufort Capital*, 2017 WL 913791, at *3 (citing *Seidel v. 18 E. 17th St. Owners, Inc.*, 79 N.Y.2d 735, 744 (N.Y. 1992)); *see also Union Capital*, 2017 WL 1406278, at *4. Moreover, even when the usury laws apply to a transaction, they apply only to payments properly characterized as "interest." *See Union Capital*, 2017 WL 1406278, at *4; *Phlo Corp.*, 2001 WL 1313387, at *5. Interest is, by definition, a payment made with a degree of certainty and regularity; conversion options, by contrast, lack certainty, because they may or may not be exercised and because their value fluctuates depending on the prevailing market price of the shares. *See Union Capital*, 2017 WL 1406278, at *4; *Phlo Corp.*, 2001 WL 1313387, at *5. Thus a conversion price is not an interest payment and, accordingly, does not fall under the protection of the usury laws.

Defendant relies on two cases, *Hillair Capital Investments, L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336 (S.D.N.Y. 2013), and *Sabella*, 2009 WL 3233703, at *17, for its

argument that the usury laws should apply to the Note's conversion option. *See* Def.'s Cross-Mot. Mem. of Law at 9–10. The Court finds these cases inapposite. In each, a borrower issued shares of stock to a lender as consideration for a loan. *See Hillair*, 963 F. Supp. 2d at 336; *Sabella*, 2009 WL 3233703, at *18–19. These cases held that the shares should be counted toward the loans' effective interest rates and, thus, that the usury laws applied to the stock payments. *See Hillair*, 963 F. Supp. 2d at 336; *Sabella*, 2009 WL 3233703, at *18–19, 27. Even if those cases were correctly decided, the Note here provided only an *option* to convert the loan's principal into shares, not a payment of shares made as up-front consideration for the loan. These cases, then, do not alter the Court's conclusion that the usury laws do not apply to the Note's conversion option.

Defendant relies on a third case, *Custom Chrome Inc. v. Comm'r of Internal Revenue*, 217 F.3d 1117, 1121–22 (9th Cir. 2000), which stated, in dicta, that stock warrants provided in connection with a loan raised the loan's "effective interest rate." The Ninth Circuit made that statement in the context of the federal tax laws; the case therefore sheds no light on the definition of "interest" under New York's usury laws.

For all these reasons, the Court finds that the Note's conversion price did not render the Note usurious.

### b.      The Share Reserve

Next, Defendant argues that the share reserve required by the Note constitutes usurious interest. Defendant's argument relies upon a single case, *Funding Grp., Inc. v. Water Chef, Inc.*, 852 N.Y.S.2d 736, 740 (N.Y. Sup. Ct. 2008), in which a court found a loan usurious on the ground that it required the borrower to pay the lender $7,500 worth of stock as an "incentive fee" for the loan. That case is wholly inapposite. The Note did not require the share reserve to be

paid to Plaintiff; it was simply security that Defendant was required to set aside so that there would be shares available if Plaintiff exercised its conversion option. Defendant cites no authority for counting such security as interest under the usury laws.

### c.    The Default Interest Rate

Next, Defendant argues that the Note's default interest provisions make the Note usurious. The Court disagrees. While the Second Circuit has not squarely ruled on the issue, the majority of district courts in this Circuit to have considered the issue have held that New York's usury laws do not apply to default interest rates. *See, e.g.*, *Hillair*, 963 F. Supp. 2d at 340 ("[D]efault payments are separate and distinct from the actual interest rate and therefore are not relevant in determining if the rate is usurious."); *Prowley v. Hemar Ins. Corp. of Am.*, No. 05-CV-981, 2010 WL 1848222, at *4 (S.D.N.Y. May 7, 2010) ("New York usury laws do not apply to defaulted obligations."); *cf. Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 144–45 (S.D.N.Y. 2017) (collecting cases).

Two district court cases, *Madden* and *Union Capital*, have reached the opposite conclusion. *See Union Capital*, 2017 WL 1406278, at *8; *Madden*, 237 F. Supp. 3d at 143. *Madden* held, and *Union Capital* agreed, that, although the issue is unsettled, New York's highest court would likely hold that the criminal usury laws apply to default interest. *See Union Capital*, 2017 WL 1406278, at *8; *Madden*, 237 F. Supp. 3d at 143. But even these cases acknowledge that, given the uncertainty surrounding this issue, a court could reasonably decide the issue either way. *See Madden*, 237 F. Supp. 3d at 143 (noting that numerous New York cases "can be read to suggest that the criminal usury cap does not apply to defaulted obligations"). Additionally, this Court is not persuaded by the authority cited in *Madden*. For example, *Madden* relies on several state cases holding that, where a contract allows for the

collection of default interest at the "highest rate permitted under law," New York's criminal usury laws impose a cap of 25 percent. *See id.* at 142–43 (citing *815 Park Ave. Owners Corp. v. Lapidus*, 227 A.D.2d 353 (1st Dep't 1996); *Stein v. Am. Mortg. Banking, Ltd.*, 216 A.D.2d 458 (2d Dep't 1995); *Emery v. Fishmarket Inn of Granite Springs*, 173 A.D.2d 765 (2d Dep't 1991); *Nextbridge Arc Fund, LLC v. Vadorra Prop., LLC*, 929 N.Y.S.2d 201 (Sup. Ct., Queens Cty., 2011)). These cases, however, did not squarely decide whether the criminal usury laws apply to default interest; they merely used the 25 percent criminal usury cap as a reference point to define the contractual term "highest rate permitted under law" because, without that reference point, the term would have no meaning. *See id.* Put differently, without a 25 percent cap, the term "highest interest permitted under law" would remain undefined in the contract. But where a contract clearly and unambiguously sets forth a default interest rate *above* 25 percent, the criminal usury laws are not necessary as an interpretive reference point. Nothing in the cases cited in *Madden* suggest that the criminal usury laws would apply in that instance.

In short, while it is possible the New York Court of Appeals will see the issue differently, this Court finds that the policy judgments underlying the usury laws do not apply to agreed-upon default interest rates. Rather, this Court concurs with the majority view in this Circuit that default interest provisions do not render a note usurious.

### d.      Defendant's Payments Pursuant to the Settlement Agreement and the Prior Order

Finally, Defendant asserts —in a point buried in its Rule 56.1 Statement—that Plaintiff has already received $84,033 (in payments under the Settlement Agreement) and $83,600 (in shares of common stock, delivered pursuant to the Prior Order), for a total of $167,632; because Plaintiff paid $100,000 for the Note, Defendant argues that the $167,632 in payments constitute a total "interest rate" of 67.6 percent. *See* Def.'s 56.1 Stmt. ¶ 6. This argument is frivolous.

Those payments were made pursuant to the parties' executory accord and to this Court's Prior Order granting Plaintiff specific performance. *See* Prior Order at 3, 12. Nothing in the record supports Defendant's argument that the difference between these payments and the purchase price of the Note constitutes "interest" under the usury laws.

For all these reasons, the Court finds that the Note is not criminally usurious. Defendant's cross-motion to vacate and cross-motion for judgment on the pleadings are denied.

## II.    Plaintiff's Motion for Partial Summary Judgment Is Granted

### A.    Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Courts "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (*per curiam*) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 79–80 (2d Cir. 2009)) (alteration omitted).

### B.    Damages for Breach of Contract

Under New York law, a plaintiff in a breach of contract action is entitled to recover "both for the value of the promised performance and for additional losses the plaintiff suffered due to the failure to perform." *Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230, 239 (S.D.N.Y. 2011) (citing *Schonfeld v. Hilliard,* 218 F.3d 164, 175–76

(2d Cir. 2000)).  These two classes of damages are awarded in "the amount necessary to put the aggrieved party in as good a position as it would have been had the contract been fully performed." *McKinley Allsopp, Inc. v. Jetborne Int'l, Inc.*, No. 89-CV-1489, 1990 WL 138959, at *8 (S.D.N.Y. Sept. 19, 1990) (citing *Kenford Co. v. Cnty. of Erie*, 67 N.Y.2d 257 (1986)).

"[I]t is well established in New York law that '[t]here is no inconsistency between an action for specific performance and an action for breach of contract.'" *Versatile Housewares*, 819 F. Supp. 2d 230 at 239 (quoting *Judnick Realty Corp. v. 32 W. 32nd Street Corp.*, 61 N.Y.2d 819 (1984)).  "Therefore, where a party seeks specific performance of a contract, New York courts will award, 'in addition to specific performance of the contract, such items of damage as naturally flow from the breach, are within the contemplation of the parties, and can be proven to a reasonable degree of certainty.'" *Id.* (quoting *Freidus v. Eisenberg*, 123 A.D.2d 174 (2d Dep't 1986)); *see also Union Capital LLC v. 5BARZ Int'l Inc.*, No. 16-CV-6203, 2017 WL 1929556, at *2 (S.D.N.Y. May 9, 2017); *Laurus Master Fund, Ltd. v. Versacom Int'l, Inc.*, No. 02-CV-5340, 2003 WL 21219791, at *4 (S.D.N.Y. May 21, 2003); *Karpinski v. Ingrasci*, 28 N.Y.2d 45, 52 (1971).

Plaintiff is entitled to damages for Defendant's breach of the Note.  In its Prior Order, the Court found that Defendant breached the Note, and the Court ordered Defendant to deliver the shares requested in the Notice of Conversion.  This remedy, however, did not account for the reduction in the value of those shares between the date that Defendant was obligated to deliver them (*i.e.*, three business days after Defendant received the Notice of Conversion) and the date the Defendant actually delivered  them (September 1, 2017).  *See* Prior Order at 11–12; Pl.'s Mem. of Law at 7.  Plaintiff would have been better off had Defendant properly performed its obligations under the Note.  Plaintiff is entitled to damages in order to be put "in as good a

position as it would have been had the contract been fully performed." *McKinley Allsopp*, 1990 WL 138959, at *8.

Defendant argues that "Plaintiff has already received the benefit of its bargain" in the form of $84,033 paid under the Settlement Agreement and $83,600 in principal that the Prior Order directed Defendant to convert into shares. Def.'s Resp. Mem. of Law at 4; Def.'s 56.1 Stmt. ¶ 8. In Defendant's view, these payments mean that "Plaintiff has been made whole and is not entitled to additional damages." Def.'s Resp. Mem. of Law at 4. Defendant is wrong. First, as to the $84,033, the Court held in the Prior Order that the Settlement Agreement is an executory accord. *See* Prior Order at 5–9. Because Defendant materially breached the Settlement Agreement (by paying only half of the amount owed under the Agreement), the Prior Order held that the payments under the Settlement Agreement did not extinguish Defendant's obligations under the Note. *See id.* at 10 (stating that Defendant's comparison between the Settlement Agreement and the Note is a comparison between "apples and oranges"). As to the $83,600 in principal that the Court ordered Defendant to convert into shares, the Prior Order's remedy did not account for the value that Plaintiff could have captured by selling the shares had Defendant delivered them when it was first obligated to do so. Even if the conversion had accounted for the entire outstanding principal and interest due under the Note—which it did not, *see id.* at 10—Plaintiff would still be in a worse position than if Defendant had timely performed the contract, because the shares that Plaintiff sought to convert were worth more at the time of the breach than at the time the shares were finally delivered.

Finally, Defendant argues that Plaintiff is not entitled to damages because the Note is criminally usurious and void as a matter of law. *See* Def.'s Resp. Mem. of Law at 4. For the reasons that the Court has discussed, this argument lacks merit.

For all these reasons, no genuine dispute exists as to Plaintiff's entitlement to damages for breach of contract.

The measure of Plaintiff's damages is slightly more complicated. Plaintiff offers evidence that on December 30, 2015 (the date that Plaintiff issued the Notice of Conversion), the volume-weighted average price of a share of Defendant's common stock was $0.142. *See* Pl.'s 56.1 Stmt. ¶ 7 (citing Malin Decl. Ex. D). The Notice of Conversion sought to purchase 1,857,777 shares on that date. *See id.* ¶ 3. Thus, had Defendant delivered the shares on December 30, 2015, Plaintiff would have received shares worth $263,804.33. *See id.* ¶ 8. By the time Defendant eventually delivered the shares (September 1, 2017), however, the volume-weighted average price per share had dropped to $0.045. *See id.* ¶ 9 (citing Malin Decl. Ex. E). As a result, Plaintiff's shares on the date that Defendant delivered them were worth only $83,599.97. *See id.* ¶ 10. The total difference in value is $180,204.36. *See id.* ¶ 11. Plaintiff argues that it is entitled to that amount in damages. *See* Pl.'s Mem. of Law at 7.[3]

Plaintiff's analysis contains several assumptions. First, the Note allowed Defendant "three business days" after receiving a Notice of Conversion to deliver the shares to Plaintiff. *See* Note § 4(a). Thus, a breach of Defendant's obligations did not occur until after those three business days had elapsed. *See id.* § 8(k) (defining an "Event of Default" as Defendant's failure

---

[3]     Defendant argues that the price of the common stock on the date of the Notice of Conversion was $0.0751 per share, not $0.142 per share as Plaintiff alleges. *See* Def.'s Resp. Mem. of Law at 4; Def.'s 56.1 Stmt. ¶¶ 7, 11. Defendant cites no part of the record for this assertion, but the argument appears to be based on the following notation in the Notice of Conversion: "Applicable Conversion Price: .045 (.0751 on Dec. 4)." Malin Decl. Ex. C. From this notation, Defendant leaps to the conclusion that the price of common stock on the date of the Notice of Conversion (*i.e.*, December 30, 2015) must have been $0.0751. This argument is frivolous. The Notice of Conversion clearly indicates that $0.0751 was the price of the stock on December 4, 2015, that is, during the historical "look back" period from which the conversion price was calculated—not on the date that the Notice of Conversion was issued, December 30, 2015. *See id.* And in case there were any doubt, Plaintiff has submitted a website printout confirming these prices, *see* Supp. Malin Decl. Ex. 1, and this evidence was not controverted by Defendant.

to deliver shares "within 3 business days of its receipt of a Notice of Conversion").  Plaintiff

issued the Notice of Conversion on December 30, 2015, so Defendant's breach did not occur

until three business days later, January 6, 2016.  *See* Malin Decl. Ex. C.  By seeking damages for

the difference in stock price between December 30, 2015 and September 1, 2017, Plaintiff

incorrectly assumes that Defendant's breach occurred on December 30, 2015.

The present record does not indicate the price of the stock on the date of breach, January

6, 2016.  The Court notes, however, that "New York courts have significant flexibility in

estimating general damages."  *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d

89, 111 (2d Cir. 2007).  Under New York law, "[t]he plaintiff need only show a stable

foundation for a reasonable estimate of the damage incurred as a result of the breach."  *Id.* at 110

(internal quotation marks omitted); *see also LifeTree Trading Pte., Ltd. v. Washakie Renewable

Energy, LLC*, No. 14-CV-9075, 2018 WL 2192186, at *3 (S.D.N.Y. May 14, 2018).  Even

though these shares are thinly traded, the price of shares on December 30, 2015, is a reasonable

estimate of Plaintiff's damages.  Looking to publicly available stock-price data, the Court takes

judicial notice that the price of Defendant's stock was higher on January 6 than on December

30.[4]  *See Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 n.8 (2d Cir. 2000) (a "district court

may take judicial notice of well-publicized stock prices"); *Adler v. Solar Power, Inc.*, No. 16-

CV-1635, 2018 WL 1626162, at *4 (S.D.N.Y. Mar. 30, 2018) (same).  Plaintiff, then, has

essentially waived its right to higher damages through a more precise calculation as of the date of

breach.  Under these circumstances, the Court will not insist that Plaintiff take a larger share of

the pie than it has asked for.

---

[4]      Specifically, the opening price per share was $0.140 on December 30, 2015 and $0.1495 on January 6,
2016.  *See* InvestorsHub.com, *Historical Data*, https://ih.advfn.com/stock-market/USOTC/5barz-international-inc-
pn-BARZ/historical/more-historical-data.

The second assumption in Plaintiff's analysis is slightly more problematic.  Plaintiff states that it "has sold all of the shares" that it received from Defendant.  Supp. Malin Decl. ¶ 8.  But Plaintiff does not provide any information about the price at which it sold the shares.  Plaintiff seeks damages for the reduction in the value of the shares between December 30, 2015 and September 1, 2017, but if the stock price rose subsequent to September 1, and if Plaintiff sold the shares at that higher price, then the difference between that higher price and the price on September 1 should be deducted from Plaintiff's damages.

Two facts, however, convince the Court that Plaintiff's damages analysis is appropriate.  First, Defendant fails entirely to address this point or otherwise to raise a nonfrivolous dispute as to the proper measure of damages.  Second, Plaintiff's statement that it has sold its shares was filed with the Court on October 29, 2017, *see* Supp. Malin Decl.; taking judicial notice of publicly available stock-price data, the Court notes that the price of Defendant's shares declined considerably between September 1 and October 29, 2017, making it questionable whether Plaintiff was able to sell the shares at a premium.[5]  *See Ganino*, 228 F.3d at 167 n.8.  Plaintiff's measure of damages, therefore, is a "reasonable estimate" of the loss that it suffered as a result of Defendant's failure to perform its obligations under the Note.  *Tractebel Energy Mktg.*, 487 F.3d at 111.

For all these reasons, the Court adopts Plaintiff's damages calculations.  Plaintiff is entitled to $180,204.36 in damages as a matter of law.

---

[5]     The opening price per share on October 30, 2017, for example, was $0.0315.  *See* InvestorsHub.com, *Historical Data*, https://ih.advfn.com/stock-market/USOTC/5barz-international-inc-pn-BARZ/historical/more-historical-data.  Of course, it is likely that part of the reduction in prior occurred because the Plaintiff sold its shares; no evidence in the record, however, confirms this conclusion.

### C.  Prejudgment Interest

"In a diversity case, state law governs the award of prejudgment interest."  *Schipani v. McLeod*, 541 F.3d 158, 164 (2d Cir. 2008).  "Under New York law, prejudgment interest 'shall be recovered upon a sum awarded because of a breach of performance of a contract.'"  *NML Capital v. Republic of Argentina*, 621 F.3d 230, 239–40 (2d Cir. 2010) (quoting N.Y. C.P.L.R. § 5001(a)).  "Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred."  N.Y. C.P.L.R. § 5001(b); *see also Jamil v. Solar Power Inc.*, 230 F. Supp. 3d 271, 277 (S.D.N.Y.), *aff'd*, 713 F. App'x 42 (2d Cir. 2017).  "The payment of such interest makes creditors whole by recognizing the benefits that a debtor obtains—and that a creditor is deprived of—when the debtor has use of the funds at issue during the pendency of litigation."  *NML Capital*, 621 F.3d at 240 (citing *Spodek v. Park Prop. Dev. Assocs.,* 96 N.Y.2d 577, 581–82 (2001)).

New York provides a statutory rate of prejudgment interest of 9 percent per annum, *see* N.Y. C.P.L.R. § 5004, but "parties are free to contract for a rate higher than the statutory rate," *L&B 57th St., Inc. v. Blanchard*, No. 95-CV-3450, 1997 WL 30945, at *2 (S.D.N.Y. Jan. 27, 1997); *see also NML Capital*, 621 F.3d at 240 ("[W]hen a contract provides for interest to be paid at a specified rate until the principal is paid, the contract rate of interest, rather than the legal rate set forth in C.P.L.R. § 5004, governs . . . ." (collecting cases)).

Other than the previously rejected arguments that the Note is usurious and that Plaintiff has "already received the benefit of its bargain," Defendant fails to dispute that Plaintiff is entitled to prejudgment interest.  *See* Def.'s Mem. of Law at 9.

The "earliest ascertainable date" that Plaintiff's cause of action existed, N.Y. C.P.L.R. § 5001(b), was the date of Defendant's breach, January 6, 2016. Plaintiff is entitled to be made whole for its inability to use the shares between January 6, 2016, and the date of performance, September 1, 2017. *See NML Capital*, 621 F.3d at 240; *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 727 F. Supp. 2d 256, 296 (S.D.N.Y. 2010). As one district court put it in an analogous case, "by failing to deliver shares upon conversion, [Defendant] was holding shares that it no longer was entitled to hold, thereby 'realiz[ing] some profit, tangible or otherwise, from having [the shares] in hand.'" *Aristocrat Leisure*, 727 F. Supp. 2d at 296 (alterations in original) (quoting *Love v. State*, 78 N.Y.2d 540, 545 (1991)).[6]

In terms of the applicable rate, the parties unambiguously contracted for a rate of 24 percent per annum in the event that Defendant failed to timely deliver the shares. *See* Note § 8. Under New York law, Plaintiff is entitled to prejudgment interest at the agreed-upon rate. *See NML Capital*, 621 F.3d at 240.

For all these reasons, the Court awards Plaintiff prejudgment interest at a rate of 24 percent per annum on its damages of $180,204.36, beginning on January 6, 2016 and continuing through the date of this opinion. The total amount of prejudgment interest awarded to Plaintiff is $116,950.00.

### D.    Attorneys' Fees and Expenses

Under New York law, parties may contract for the indemnification of attorneys' fees and expenses. *See Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491–92 (1989). "'[T]he fee applicant bears the burden of establishing entitlement to an award and documenting

---

[6]    There is no inconsistency between awarding damages based on the stock price on December 30, 2015 and awarding prejudgment interest beginning on January 6, 2016. As the Court has discussed, the stock price on December 30, 2015 is a proxy, or a "reasonable estimate," *Tractebel Energy Mktg.*, 487 F.3d at 111, for the stock price on the date of breach, January 6, 2016.

the appropriate hours expended and hourly rates.'" *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). District courts have broad discretion in determining whether attorneys' fees are reasonable. *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 323 (S.D.N.Y. 2014) (citing *Hensley*, 461 U.S. at 437); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

The Note requires Defendant to pay all "reasonable attorneys' fees and expenses" that Plaintiff incurs in enforcing the provisions of the Note. *See* Prior Order at 3, 13; Note §§ 7, 8. Plaintiff seeks attorneys' fees for approximately 15.4 hours of work, at a rate of $375 per hour, plus expenses, for a total of $5,837.12. *See* Pl.'s Mem. of Law at 9; Fleischmann Decl. Ex 1.

The Prior Order found that Plaintiff's counsel's billing rate of $375 per hour was reasonable, given his seniority and experience. *See* Prior Order at 13–14. Defendant now argues that Plaintiff's counsel billed a different client at a rate of $350 per hour, purportedly raising a dispute of fact as to whether his $375-per-hour rate is reasonable. *See* Def.'s Resp. Mem. of Law at 10. Plaintiff's counsel, however, offers undisputed evidence that his relationship with that other client began a year earlier than his relationship with Plaintiff, and that his fees increased by $25 per hour during the intervening period. *See* Pl.'s Reply Mem. of Law at 16; Supp. Fleischmann Decl. ¶ 3. The Court believes that this increase is reasonable and, in any event, adheres to its prior ruling that $375 per hour is a reasonable rate.

As for the number of hours expended in connection with this motion, Plaintiff has offered an invoice showing his contemporaneous time records. *See* Flesichmann Decl. Ex. 1. The Court has reviewed these records and finds that the number of hours expended is within the range of what would be expected for a motion of this sort.

For all these reasons, the Court awards Plaintiff $5,837.12 in attorneys' fees and expenses.

## III.     All of Plaintiff's Other Claims Are Dismissed

The Prior Order directed Plaintiff to move for summary judgment on any claims that it wished to pursue and stated that if Plaintiff failed to do so, the Court would dismiss the remaining claims.  *See* Prior Order at 14.  In the motion currently before the Court, Plaintiff moves for summary judgment only as to its breach of contract claim and its claim for attorneys' fees (that is, the Second and Fifth Causes of Action in the Complaint, respectively).  *See* Pl.'s Mem. of Law at 2.

Plaintiff has not moved for summary judgment on its claims for conversion, for a permanent injunction, or for breach of the Settlement Agreement (that is, the Third, Fourth, and Sixth Causes of Action in the Complaint, respectively).  Accordingly, those claims are dismissed for failure to prosecute.

## CONCLUSION

For all the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. 55) is GRANTED.  The Court awards Plaintiff $180,204.36 in damages, $116,950.00 in prejudgment interest, and $5,837.12 in attorneys' fees.  Defendant's cross-motions to vacate and for judgment on the pleadings (Dkt. 68) are DENIED.  All claims on which Plaintiff did not move for summary judgment (specifically, Plaintiff's claims for conversion, for a permanent injunction, and for breach of the settlement agreement) are DISMISSED.  The Clerk is respectfully directed to terminate all open motions and to CLOSE the case.

**SO ORDERED.**

**Date:  September 19, 2018**
**          New York, New York**

**VALERIE CAPRONI**
**United States District Judge**